On January 20, 2016, the Indiana Supreme Court established a 3-year Commercial Courts Pilot Project ("Pilot Project") to start June 1, 2016 and end June 1, 2019. The purpose of the Pilot Project was to:
• Establish judicial practices that will help all court users by improving court efficiency;
• Allow commercial disputes to be resolved efficiently with expertise and technology;
• Enhance the accuracy, consistency, and predictability of judicial decisions in commercial cases;
• Enhance economic development in Indiana by furthering the efficient resolution of commercial law disputes; and
• Employ and encourage electronic information technologies, and early alternative ADR interventions.
The Court has evaluated the progress of the Pilot Project and determined that it has been successful in advancing these benchmarks and goals. The Court now *538 ORDERS that the Commercial Courts be permanently established in Indiana with the following judges:
• Judge Craig Bobay, Allen Superior Court - Civil Division
• Judge Stephen Bowers, Elkhart Superior Court 2
• Judge Richard D'Amour, Vanderburgh Superior Court
• Judge Maria Granger, Floyd Superior Court 3
• Judge John Sedia, Lake Superior Court
• Judge Heather Welch, Marion Superior Court, Civil Division 1
Commercial Courts Committee
On June 2, 2015, the Indiana Supreme Court issued an order establishing the Indiana Commercial Court Working Group to provide guidance throughout the Pilot Project. As the Indiana Commercial Courts enter a new phase, a standing committee shall continue to provide guidance.
The "Commercial Court Committee" shall consist of the following, as determined by the Commercial Court judges. Membership of the Committee shall include individuals experienced in business litigation and the judicial system. The Committee should consist of:
• Commercial Court judges, one representing each Commercial Court
• Lawyers
• Litigators representing small and large businesses
• Transactional attorneys representing small and large businesses
• In-house counsel representing small and large businesses
• Other lawyers with expertise in commercial litigation
• At least one legislative representative
• At least one Chamber of Commerce Representative
• At least one law professor in this subject matter
It is ORDERED that the Indiana Commercial Court Committee established by order of this Court will continue to provide guidance for the Indiana Commercial Courts.
It is further ORDERED that Indiana Office of Court Services shall provide staff support to the Commercial Court Working Group.
Commercial Court Rules
On April 27, 2016, the Indiana Supreme Court issued an order adopting the Interim Commercial Court Rules for the Indiana Commercial Courts Pilot Project.
Based upon the experience these rules have been amended in part. The Indiana Supreme Court adopts these Commercial Court Rules for the Indiana Commercial Courts. The purpose of these rules is to (1) promote the efficient resolution of commercial disputes; (2) improve court efficiency for all court users; (3) employ and encourage early alternative dispute interventions; (4) enhance the accuracy, consistency, and predictability of judicial decisions in commercial cases; and (5) enhance economic development in Indiana by furthering the efficient resolution of commercial law disputes.
The Commercial Court Rules are attached as Exhibit A.
This Order and the attached Rules shall take effect on June 1, 2019.
Exhibit A
Rule 1. Introduction and Definitions
The following Rule shall apply to all the cases on the Commercial Court Docket. As used in this Rule:
*539 (A) Business entity. "Business entity" means a for-profit or nonprofit corporation, partnership, limited partnership, limited liability company, limited liability partnership, professional association, professional corporation, business trust, joint venture, unincorporated association, or sole proprietorship, or any other legal entity recognized by any state and doing business in the State of Indiana.
(B) Commercial court. "Commercial court" means a court with a specialized Commercial Court Docket as described, organized, and administered under these Commercial Court Rules and any applicable Indiana Supreme Court Order.
(C) Rule. "Rule" as used in these Commercial Court Rules means any rule promulgated by the Indiana Supreme Court, or by administrative district rule or local rule.
Commentary: Commercial Courts employ and encourage electronic information technologies, such as e-filing, e-discovery, telephone / video conferencing, and also employ early alternative dispute resolution interventions, as consistent with Indiana law.
Rule 2. Cases Eligible for the Commercial Court Docket
Any civil case, including any jury case, non-jury case, injunction, temporary restraining order, class action, declaratory judgment, or derivative action, shall be eligible for assignment into the Commercial Court Docket pursuant to Commercial Court Rule 4 if the gravamen of the case relates to any of the following:
(A) The formation, governance, dissolution, or liquidation of a business entity;
(B) The rights or obligations between or among the owners, shareholders, officers, directors, managers, trustees, partners, or members of a business entity, or rights and obligations between or among any of them and the business entity;
(C) Trade secret, non-disclosure, non-compete, or employment agreements involving a business entity and an employee, owner, shareholder, officer, director, manager, trustee, partner, or member of the business entity;
(D) The rights, obligations, liability, or indemnity of an owner, shareholder, officer, director, manager, trustee, partner, or member of a business entity owed to or from the business entity;
(E) Disputes between or among two or more business entities or individuals as to their business activities relating to contracts, transactions, or relationships between or among them, including without limitation the following:
(1) Transactions governed by the Uniform Commercial Code, except for claims described in Commercial Court Rule 3(B) and 3(O);
(2) The purchase, sale, lease, or license of; a security interest in; or the infringement or misappropriation of patents, trademarks, service marks, copyrights, trade secrets, or other intellectual property;
(3) The purchase or sale of a business entity, whether by merger, acquisition of shares or assets, or otherwise;
(4) The sale of goods or services by a business entity to a business entity;
(5) Non-consumer bank or brokerage accounts, including loan, deposit, cash management, and investment accounts;
(6) Surety bonds and suretyship or guarantee obligations of individuals given in connection with business transactions;
(7) The purchase, sale, lease, or license of or a security interest in commercial *540 property, whether tangible or intangible personal property or real property;
(8) Franchise or dealer relationships;
(9) Business related torts, such as claims of unfair competition, false advertising, unfair trade practices, fraud, or interference with contractual relations or prospective contractual relations;
(10) Cases relating to or arising under antitrust laws;
(11) Cases relating to securities or relating to or arising under securities laws;
(12) Commercial insurance contracts, including coverage disputes;
(13) Environmental claims arising from a breach of contractual or legal obligations or indemnities between business entities;
(14) Cases with a gravamen substantially similar to the foregoing (1 - 13) and not otherwise encompassed by Commercial Court Rule 3.
(F) Subject to acceptance of jurisdiction over the matter by the Commercial Court Judge, cases otherwise falling within the general intended purpose of the Commercial Court Docket wherein the parties agree to submit to the Commercial Court Docket.
Rule 3. Cases Not Eligible for the Commercial Court Docket
A civil case shall not be eligible for assignment into the Commercial Court Docket pursuant to Commercial Court 4 if the case does not relate to any of the topics provided under Commercial Court Rule 2, or the gravamen of the case relates to any of the following:
(A) Personal injury, survivor, or wrongful death matters;
(B) Consumer claims against business entities or insurers of business entities, including breach of warranty, product liability, and personal injury cases and cases arising under consumer protection laws;
(C) Matters involving only wages or hours, occupational health or safety, workers' compensation, or unemployment compensation;
(D) Environmental claims, except as described in Commercial Court Rule 2(E)(13);
(E) Matters in eminent domain;
(F) Employment law cases, except those as described in Commercial Court Rule 2(C);
(G) Discrimination cases based upon the federal or state constitutions or the applicable federal, state, or political subdivision statutes, rules, regulations, or ordinances;
(H) Administrative agency, tax, zoning, and other appeals;
(I) Petition actions in the nature of a change of name of an individual, mental health act, guardianship, or government election matters;
(J) Individual residential real estate disputes, including foreclosure actions, or non-commercial landlord-tenant disputes;
(K) Any matter subject to the jurisdiction of the domestic relations, juvenile, or probate divisions of a court;
(L) Any matter subject to the exclusive jurisdiction of a city court, a town court, or the small claims division of a court;
(M) Any matter required by statute or other law to be heard in some other court or division of a court;
(N) Any criminal matter, other than criminal contempt in connection with a *541 matter pending on the Commercial Court Docket;
(O) Consumer debts, such as debts or accounts incurred or obtained by an individual primarily for a personal, family, or household purpose; credit card debts incurred by individuals; medical services debts incurred by individuals; student loans; tax debts of individuals; promissory notes not primarily associated with purchasing an interest in a business; personal automobile loans; legal fees incurred for family or household purposes (such as probate, divorce, child custody, child support, criminal defense, negligence, and other tortious acts); and other similar types of consumer debts.
Rule 4. Assignment of Case to the Commercial Court Docket
Notwithstanding the case assignment requirements of any applicable Rule, the following shall apply to cases in a court that has a Commercial Court Docket.
(A) If a case is eligible for assignment to a Commercial Court Docket pursuant to Commercial Court Rule 2, and a party seeks to have the case assigned to the Commercial Court Docket, the attorney representing that party shall identify the case as a "Commercial Court Docket Case" by filing with the clerk of the court a "Notice Identifying Commercial Court Docket Case" ("Identifying Notice").
(B) If a party does not consent to assigning the case to the Commercial Court Docket, the attorney representing that party shall file with the clerk a "Notice of Refusal to Consent to Commercial Court Docket" ("Refusal Notice").
(C) A "Refusal Notice" must be filed not later than the latter to occur of the following: (1) thirty (30) days after service of the Identifying Notice; or (2) the thirty (30) days after the date the non-consenting party first appears in the case.
(D) If an Identifying Notice is filed by the party initiating the case and no other party has appeared in the case: (1) the clerk of the court shall assign the case to the Commercial Court Docket, which assignment is deemed a provisional assignment; (2) if no Refusal Notice is timely filed by any party that has appeared in the case, the assignment of the case is deemed permanent; and (3) if a Refusal Notice is timely filed, the *542 clerk shall transfer and assign the case to the Commercial Court Docket of the Commercial Court judge.
(E) If more than one party has already appeared in a case when an Identifying Notice is filed: (1) the clerk shall notify the court in which the case is pending that an Identifying Notice has been filed and the case is subject to transfer and assignment to the Commercial Court Docket if no Refusal Notice is timely filed; (2) if no Refusal Notice is timely filed, the clerk shall transfer and assign the case to the Commercial Court Docket, which assignment is a permanent assignment; and (3) if a Refusal Notice is timely filed, the clerk shall notify the court in which the case is pending that a Refusal Notice has been filed and the case will not be transferred to the Commercial Court Docket.
(F) If, after a case has been permanently assigned to a Commercial Court Docket pursuant to subsections (D)(2) or (E)(2), a new party appears in the case as a result of a cross-claim, counterclaim, third-party complaint, amendment, or otherwise: (1) the assignment of the case to the Commercial Court Docket becomes provisional, subject to the new party's right to file a Refusal Notice pursuant to subsections (B) and (C)(2); (2) if no Refusal Notice is timely filed by the new party, the assignment of the case is permanent; and (3) if a Refusal Notice is timely filed, the clerk shall transfer and assign the case to the non-Commercial Court Docket of the Commercial Court judge.
(G) Special Situations.
(1) Temporary restraining orders and other emergency matters. As to any case described in subsections (D), (E), and (F) that the clerk is required to transfer, the original court and judge retains jurisdiction to hear and determine requests for temporary restraining orders and other emergency matters until the transferee court has assumed jurisdiction.
(2) New Trial; After Remand. If, in a case assigned to a Commercial Court Docket, the trial court or a court on appeal orders a new trial, or if a court on appeal otherwise remands the case such that a further hearing and receipt of evidence are required to reconsider all or some of the issues heard during the earlier trial, (a) the clerk shall again assign the case to the Commercial Court Docket, which assignment is deemed a provisional assignment; (b) if no party files a Refusal Notice on or before thirty (30) days after the date the case is assigned to the Commercial Court Docket, the new assignment of the case is deemed permanent; and (c) if a Refusal Notice is timely filed, the clerk shall transfer and assign the case to a non-Commercial Court Docket in accordance with applicable Rule.
(3) Review of assignment to the Commercial Court Docket. If a Commercial Court Judge determines at any time that a case is or was not eligible for assignment to a Commercial Court Docket, the judge shall order the case assigned, and the clerk shall transfer the case to a non-Commercial Court Docket in accordance with applicable Rule. The judge's determination shall not be subject to appeal.
(H) Any and all decisions of a party to file an Identifying Notice or not to file timely a Refusal Notice are binding and irrevocable except upon the agreement of all parties and the court. A party that files an Identifying Notice or does not file timely a Refusal Notice waives (a) any right to apply for a change of judge or county under Trial Rule 76 except as provided in Trial Rule 76(A) or (C)(6) and (b) any right to contest, at any time during the proceedings or on appeal, the eligibility for assignment of the case to the Commercial Court Docket.
Commentary:
1. A crucial feature of Rule 4 is that any party can seek to have a case placed on the Commercial Court Docket at any time, even after the case has been pending on a non- Commercial Court Docket for an extended period of time. Since every other party has an absolute veto, no transfer of a well-underway proceeding can occur unless all parties agree.
2. Permitting any party to seek to have the case placed on the Commercial Court Docket at any time accommodates the case that is not initially eligible for assignment to the Commercial Court Docket but subsequently becomes eligible as a result of a cross-claim, counterclaim, third-party complaint, amendment, or otherwise.
3. These Commercial Court Rules are limited to cases filed after June 1, 2016. Cases already pending on this Rule's effective date cannot be transferred to the Commercial Court Docket, even if all parties consented.
*543 4. Commercial Court Rule 4(B) is an "opt-out" provision. The default is that a case identified by one party as a Commercial Court Docket case is assigned to the Commercial Court Docket unless another party timely objects to the assignment (or, as provided elsewhere in the Commercial Court Rules, the judge determines that the case is not eligible for the Commercial Court Docket).
5. Commercial Court Rule 4(C)(2) accommodates a new party who is added to the litigation later as a result of a cross-claim, counterclaim, third-party complaint, amendment, or otherwise.
6. The language of Commercial Court Rule 4(C)(2) "first appears in the case" is the same as used in Trial Rule 3.1(B) governing the filing of the appearance form by responding parties.
7. The provisions of Commercial Court Rule 4(G)(1) concerning emergency matters are intended to operate in the same way as Trial Rule 79(O), which provides: "Emergencies. Nothing in this rule shall divest the original court and judge of jurisdiction to hear and determine emergency matters between the time a motion for change of judge is filed and the appointed special judge accepts jurisdiction."
8. The provisions of Commercial Court Rule 4(G)(2) concerning assignment to the Commercial Court Docket after remand are intended to operate in the same way as Trial Rule 76(C)(3), which provides: "[I]f the trial court or a court on appeal orders a new trial, or if a court on appeal otherwise remands a case such that a further hearing and receipt of evidence are required to reconsider all or some of the issues heard during the earlier trial, the parties thereto shall have ten days from the date the order of the trial court is entered or the order of the court on appeal is certified."
9. Commercial Court Rule 4(H) references Trial Rule 76(A) and (C)(6), which provide a limited change of venue and judge right for cause.
Rule 5. Commercial Court Masters
(A) Appointment and Compensation.
(1) As used in these rules, "Commercial Court Master" includes without limitation an attorney, a senior judge, or a non-attorney who has special skills or training appropriate to perform the tasks that may be required. A Commercial Court Judge may appoint a Commercial Court Master in any case pending on the commercial court docket if:
a. All parties consent to appointment of a Commercial Court Master; or
b. If all parties do not consent, the Court, after giving notice to the parties and an opportunity to be heard finds it probable that:
i. Appointment of a Commercial Court Master will materially assist the Court in resolving the case in a just and timely manner;
ii. The anticipated costs associated with the appointment of a Commercial Court Master are proportionate to the value of the case; and
iii. The anticipated costs associated with the appointment of a Commercial Court Master will not be unduly burdensome to any party.
(2) The compensation allowed to the Commercial Court Master must be reasonable. The rate of compensation and the allocation of the cost between the parties shall be established by the Court, with consideration of input provided by the parties and the Commercial Court Master. However, if the parties *544 seek appointment of a senior judge as a Commercial Court Master, the appointment must be approved by the Supreme Court, and compensation determined under Trial Rule 53(A).
(3) The order of reference to the Commercial Court Master must specify the Master's powers. The order of reference may also direct the master to report only upon particular issues, to perform particular acts, or to receive and report evidence only, and fix the time and place for beginning and closing hearings, and for the filing of the Master's report. Subject to the specifications and limitations stated in the order of reference, the Master has the power to regulate all proceedings before the Master, and to take all measures necessary or proper for the efficient performance of the duties assigned under the order.
(4) The Commercial Court Master may require the production of evidence on all matters embraced in the order of reference, including the production of records and documents of all kinds, including electronic media. The Master may rule upon the admissibility of evidence unless otherwise directed by the order of reference and has the authority to place witnesses under oath. The Master may examine witnesses, including the parties to the action, under oath. The Master may permit the parties to examine witnesses under oath, and may place reasonable limits on the examination of witnesses by the parties.
(5) If a party so requests, the Master must make a record of the evidence offered and excluded in the same manner, and subject to the same limitations, as provided for a court sitting without a jury.
Commentary: The Commercial Court Judge must issue an Order specifying the powers delegated to the Commercial Court Master. The Court may direct counsel for the parties to submit a proposed order setting forth those proposed powers, and/or the Court may wish to craft the Order in conference with counsel. However, the ultimate scope of the Order is dictated by that which is necessary and appropriate under the circumstances, and is left to the sound discretion of the Court.
(B) Proceedings.
(1) Meetings. When a reference is made, the clerk must forthwith furnish the Commercial Court Master and the parties with a copy of the order of reference. Upon receipt of the order of reference, the Commercial Court Master must forthwith set a time and place for the first meeting of the parties or their attorneys, to be held within twenty (20) days thereafter, unless the order of reference provides otherwise. The Master must forthwith notify the parties or their attorneys of the date of such meeting. It is the duty of the Master to proceed with all reasonable diligence. Either party, on notice to the parties and Master, may apply to the Commercial Court Judge for an order requiring the Master to expedite the proceedings and to make a report. If a party fails to appear at the time and place appointed, the Master may proceed ex parte or, in the discretion of the Master, may postpone the proceedings to a future day, giving notice to the absent party of the postponement.
*545 (2) Witnesses. The parties may procure the attendance of witnesses before the Commercial Court Master by the issuance and service of subpoenas as provided in Trial Rule 45. If, without adequate excuse, a witness fails to appear or give evidence, the witness may be punished for the contempt by the Commercial Court Judge and may be subjected to the consequences, penalties, and remedies provided in Trial Rules 37 and 45.
(3) Statement of Accounts. When matters of accounting are in issue, the Commercial Court Master may prescribe the form in which the accounts must be submitted, and in any proper case may require or receive in evidence a statement by a certified public accountant who is called as a witness. Upon objection of a party to any of the items thus submitted or upon a showing that the form of statement is insufficient, the Master may require a different form of statement to be furnished, or the accounts or specific items thereof to be provided by oral examination of the accounting parties, or upon written interrogatories, or in such other manner as directed
(C) Report.
(1) Contents and Filing. The Commercial Court Master must prepare a report upon the matters submitted by the order of reference and, upon request of any party or the Commercial Court Judge, must submit the report before hearing or the taking of evidence. The Master must file the report with the clerk of the court; and in an action to be tried without a jury, must file with it a transcript of the proceedings and of the evidence and the original exhibits, unless otherwise directed by the order of reference.
(2) In Nonjury Actions. In an action to be tried without a jury, the Commercial Court Judge must accept the Commercial Court Master's decision or findings of fact unless clearly erroneous. Within ten (10) days after being served with notice of the filing of the report, any party may serve written objections thereto upon the other parties. Application of the Commercial Court Judge for action upon the report and upon objections thereto must be by motion and upon notice as prescribed in Trial Rules 5 and 6. After hearing, the Commercial Court Judge may adopt the report, reject it in whole or in part, receive further evidence, or recommit it to the Master with instructions.
(3) In Jury Actions. In an action to be tried by a jury, the Commercial Court Master must not be directed to report the evidence. The Master's findings upon the issues submitted are admissible as evidence of the matters found and may be read to the jury, subject to the ruling of the Commercial Court Judge upon any legal objections made to the report.
(4) Stipulation as to Findings. If the parties stipulate that a Commercial Court Master's findings of fact are to be final, only questions of law arising upon the report may thereafter be considered.
(5) Draft Report. Before filing the report, a Commercial Court Master may submit a draft thereof to counsel for all parties for the purpose of receiving their suggestions.
*546 Rule 6. Discovery
(A) Scope. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible as evidence to be discoverable.
(B) Initial Discovery / Required Initial Disclosures.
(1) The information and documents identified in the Initial Disclosures are those most likely to be automatically requested by experienced counsel in a similar case and which will most likely to be useful in narrowing the issues. These Initial Disclosures are not intended to be exhaustive of what should be shared by the parties or to preclude other necessary discovery.
(2) A party must, without awaiting a discovery request, provide the other parties the following:
a. The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
b. A copy or description by category and location of all documents, electronically stored information, and tangible documents/items that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;
c. A computation of each category of damages claimed by the disclosing party who must also make available for inspection and copying the documents or evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;
d. A copy of any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in an action or to indemnify or reimburse for payments made to satisfy the judgment; and,
e. Documents that support any irreparable harm being alleged by the Plaintiff or any concerning any damages that Plaintiff is seeking in the Complaint.
(3) A party must make the above Initial Disclosures no later than twenty-one (21) days before the initial case management conference, unless a different time is set by agreement of the parties or court order.
(4) The parties should also submit a discovery plan within 14 days after the parties' initial case management conference, unless a different time is set by agreement of the parties or court order.
(5) Generally, the relevant time period for all Initial Disclosures is a period of six (6) years prior to the date of the adverse action that forms the basis of the claim/counterclaim or defense, unless a different time is set by agreement of the parties or court order.
*547 (C) General Discovery Requirements.
(1) If a party objects to a discovery request, either in whole or in part, the objecting party must concisely state in detail the basis for the objection. If a party provides a partial or incomplete answer or response to a discovery request, the responding party must state specifically the reason that the answer or response is partial or incomplete.
(2) All Discovery, including Initial Disclosures, shall be supplemented in accordance with Rule 26(E) of the Indiana Rules of Trial Procedure.
(3) Requests to seal information from public access must conform with Administrative Rule 9(G).
(D) Limitations on Discovery.
(1) No party shall serve more than 25 interrogatories, including sub-parts, unless otherwise agreed to by agreement of the parties or court order.
(2) Each party is limited to not more than ten depositions, with a seven-hour limit for each deposition, unless otherwise agreed to or ordered by the Court.
(E) Electronically Stored Information Preservation. Consistent with Rule 37(e) of the Federal Rules of Civil Procedure, the following applies to the duty of litigants to preserve electronically stored information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
a. presume that the lost information was unfavorable to the party;
b. instruct the jury that it may or must presume the information was unfavorable to the party; or
c. dismiss the action or enter a default judgment.
(F) Resolving Discovery Disputes.
(1) Strict compliance with the Ind. T.R.26(F) meet and confer requirements in resolving discovery disputes is mandatory. This includes actual face-to-face or telephonic meetings. An exchange of emails or letters alone is insufficient. Prompt ruling on discovery disputes deters unreasonable and obstructive conduct, and prevents the frustration of existing discovery deadlines and the delay of ongoing discovery while a ruling is pending. The discovery plan must include specific provisions for the fair and efficient resolution of discovery disputes, including:
a. A requirement that counsel seeking relief first specify to opposing counsel a concise statement of the alleged deficiencies or objections and then meet in good faith to try to effectuate a written resolution of the dispute before submission to the court for resolution.
b. A mechanism for the expedient submission to the court of discovery disputes which counsel were not able to resolve, including submissions *548 via conference call or email.
c. Restrictions on the length of motions, memoranda and supporting materials, and time limits for their submission.
d. Prohibiting, in all but extraordinary circumstances, the conduct of discovery with respect to a discovery dispute itself.
e. The appointment of a special master to resolve discovery disputes.
(2) Before seeking a protective order from the court, the parties must confer in an effort to agree to a stipulated protective order regarding the disclosure and exchange of any discovery documents. The court will not consider any protective order unless:
a. the parties verify to the court that they have personally or telephonically conferred regarding the need for and form of the protective order, or
b. the party seeking the protective order can demonstrate that through good faith efforts it was not possible to confer and time is of the essence in considering the need for a protective order. An exchange of emails or letters alone is insufficient.